UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

FERRILL J. VOLPICELLI,

    Petitioner,

vs.

JACK PALMER, *et al.*,

    Respondents.

3:07-cv-00585-LRH-RAM

ORDER

This habeas matter under 28 U.S.C. § 2254 comes before the Court on the respondents' motion (#16) to dismiss as well as upon the petitioner's related motion (#21) for leave to amend the petition. The motion to dismiss follows upon the Court's response order under Rule 4 of the Rules Governing Section 2254 Cases (the "Habeas Rules"). The Court's order directed the filing of a motion to dismiss limited to the threshold jurisdictional question of whether petitioner is "in custody" as to the petition for purposes of federal habeas jurisdiction. The order directed respondents to address Nevada state statutory and jurisprudential authorities relevant to the federal jurisdictional issue of whether sufficient collateral consequences remained to support federal habeas jurisdiction. See #7, at 4-5.

### *Background*

On November 3, 1998, petitioner Ferrill Volpicelli was convicted in Nevada state court, pursuant to a guilty plea, of two counts of burglary (Counts I and II). On Count I, he was sentenced to 24 to 72 months to run consecutively to a federal prison term that he was obligated to serve. On Count II, he was sentenced to 16 to 72 months to run consecutively to Count I. However, the sentence on

Count II was suspended and Volpicelli was placed on probation for a period of time not to exceed three years, to run consecutively to Count I and consecutively to the federal prison term.[1]

Volpicelli filed motions for clarification and for reconsideration of the judgment, which were denied. He thereafter did not file a direct appeal from the conviction.[2]

According to the petition, Volpicelli was arrested on October 17, 2001, and convicted on separate charges.

On January 20, 2004, the state district court entered an order dishonorably discharging Volpicelli from probation on Count II. The order stated that the period of such probation had expired on October 28, 2003. The order provided, *inter alia*, that Volpicelli "is hereby dishonorably discharged from supervision and from any obligation respecting the conditions of said probation."[3]

On June 25, 2004, petitioner filed a motion to vacate order and reinstate probation in state district court, in which he sought to set aside the dishonorable discharge order. The state district court denied the motion on December 7, 2004, and petitioner subsequently sought to appeal. On March 4, 2005, the Supreme Court of Nevada dismissed petitioner's appeal as untimely.[4]

On May 13, 2005, Volpicelli filed a state post-conviction petition seeking to challenge the dishonorable discharge from probation. The state district court denied the petition on the basis that state post-conviction relief could not be granted after the expiration of the petitioner's sentences. The district court stated, *inter alia*, that "Petitioner is currently <u>not</u> on probation or serving a prison sentence in this case." The Supreme Court of Nevada affirmed on this same ground in an October 12, 2007, order.[5]

In the present federal petition, which was mailed for filing on or about November 28, 2007, petitioner challenges the dishonorable discharge order. He states that he does not challenge the conviction itself.

---

[1] #17, Ex. 11.

[2] #17, Exhs. 12-27.

[3] #17, Ex. 44.

[4] #17, Exhs. 58, 66, 68 & 75.

[5] #17, Ex. 82; *id.*, Ex. 89, at 2 (emphasis in original); *id.*, Ex. 104.

*Governing Law*

Custody is a fundamental prerequisite to federal habeas jurisdiction. *See,e.g., Maleng v. Cook*, 490 U.S. 488, 492,109 S.Ct. 1923, 1926, 104 L.Ed.2d 540 (1989). The petitioner must be "in custody" by reason of the conviction or order challenged at the time that the federal petition is filed for federal habeas jurisdiction to be present. *E.g., De Long v. Hennessey*, 912 F.2d 1144, 1146 (9th Cir. 1990). Generally, a petitioner no longer is in custody for purposes of federal habeas jurisdiction where the sentence imposed by the conviction fully expired prior to the filing of the federal petition. *See,e.g., De Long, supra*; *Henry v. Lungren*, 164 F.3d 1240, 1241 (9th Cir 1999).

*Discussion*

Petitioner initially relied upon a potential negative effect on future decisions regarding prison confinement, parole and probation to establish the presence of continuing custody from the dishonorable discharge order. This circumstance is insufficient to sustain federal habeas jurisdiction. The Supreme Court has twice held that a potential negative impact on future decisions does not prevent a federal habeas challenge from becoming moot in cases where the petitioner initially was in custody for purposes of federal habeas jurisdiction when the petition was filed.

In *Lane v. Williams*, 455 U.S. 624, 102 S.Ct. 1322, 71 L.Ed.2d 508 (1982), the Supreme Court held that an attack directed only to the sentence imposed rather than the underlying conviction itself, based upon a failure to advise of a mandatory parole requirement, became moot upon the expiration of the sentence and parole term during federal habeas proceedings. The argument was made in *Lane* that a prior finding of a parole violation had sufficient collateral effects to warrant the continued exercise of federal habeas review. The *Lane* Court rejected this argument, however. The Court held, against the backdrop of relevant Illinois state law, that the possibility that a sentence imposed in future criminal proceedings could be affected by a prior parole violation finding was insufficient to sustain the continued exercise of federal habeas review. 455 U.S. at 631-33, 102 S.Ct. at 1327-28.

In *Spencer v. Kemna*, 523 U.S. 1, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998), the Court held that, although jurisdiction was present because the petitioner had been in physical custody by reason of the parole revocation order at the time that the petition was filed, a petition challenging only the parole revocation order – as opposed to the conviction itself – became moot upon the expiration of the

1  underlying sentence during the federal habeas proceedings.  Following *Lane*, the *Spencer* Court held,
2  against the backdrop of relevant Missouri law, that the possibility that a past parole revocation order
3  might enable a parole board to deny parole in the future was not a sufficient collateral consequence to
4  prevent the case from becoming moot.  523 U.S. at 7 & 12-16, 118 S.Ct. at 983 & 985-87.[6]

5  The possible impact of a dishonorable discharge order on future decisions under relevant
6  Nevada state law is substantially similar to the impact of the parole revocation orders under the state
7  laws reviewed in *Lane* and *Spencer*.  As in the case of the parole revocation orders in the two Supreme
8  Court decisions, the mere presence or absence of a dishonorable discharge order does not appear to be
9  determinative under Nevada law in subsequent discretionary decisions as to sentencing, prison
10 confinement, parole and probation on later charges.  Petitioner has identified no Nevada statutory or
11 jurisprudential authority establishing that a dishonorable discharge order has controlling effect in any
12 such subsequent decisions.  The statutes and regulations canvassed in the respondents' reply further do
13 not give a dishonorable discharge order controlling effect as to any subsequent sentencing, parole or
14 probation determinations.[7]  *Cf. Lane*, 455 U.S. at 632-33 & n.13, 102 S.Ct. at 1327-28 & n.13 (prior
15 parole revocation was not determinative in later discretionary decisions under Illinois law); *Spencer*,
16 523 U.S. at 13-16, 118 S.Ct. at 986-87 (similar under Missouri law).

---

18  [6]The petitioner in *Spencer*, like Volpicelli, then was serving a term of imprisonment on other charges.  523 U.S.
19  at 14, 118 S.Ct. at 986.  The *Spencer* Court further rejected the proposition that collateral consequences should be presumed with regard to challenges to parole revocation orders.  523 U.S. at 7-14, 118 S.Ct. at 983-86.  The Court also rejected the argument that *Lane* should be limited only to situations where the underlying parole violation finding was
20  not being attacked.  523 U.S. at 13 n.5, 118 S.Ct. at 986 n.5.

21  [7]See #29, at 10-13.  Respondents initially did not fully comply with the Court's response order.  The order
22  directed respondents, *inter alia*, to "outline any relevant Nevada statutory and jurisprudential authorities bearing on the petitioner's claim of collateral consequences from the dishonorable discharge order including, in particular, relevant
23  authorities bearing on the manner in which the dishonorable discharge is considered in later sentencing, parole and/or probation decisions," citing to the analogous discussions in *Lane* and *Spencer*. #7, at 4-5.  Respondents' motion to
24  dismiss did not comply with this provision.  Respondents later complied with the provision in the reply after the petitioner pointed out respondents' failure and a new attorney was enrolled.  While respondents ultimately complied
25  with the order, respondents maintain that they are being required to address a matter as to which the petitioner has the burden and to disprove a negative.  The targeted briefing directive in the response order on the *sua sponte* jurisdictional
26  inquiry fell well within the Court's broad authority under Habeas Rule 4 to "order the respondent to file an answer, motion, or other response within a fixed time, or to take other action the judge may order."  This is not the first instance
27  in which respondents have disregarded provisions in a response order.  If respondents wish to dispute the Court's authority to issue such a directive – rather than taking the opportunity to support a dismissal – respondents should file a
28  motion for reconsideration.  Simply disregarding the Court's orders, however, will lead to sterner measures being taken.

Custody for purposes of federal habeas jurisdiction is determined as of the time that the federal petition is filed. *E.g., De Long, supra.* Certain collateral consequences of a conviction or order may prevent a federal habeas action from becoming moot if the petitioner was in custody by reason of the conviction or order when the federal petition was filed. However, the very same collateral consequences may not provide a sufficient basis for establishing custody for federal habeas jurisdiction if the underlying sentence instead had expired before the federal petition was filed. *See, e.g., Maleng*, 490 U.S. at 491-92, 109 S.Ct. at 1925-26. That is, collateral consequences that may not support jurisdiction in the first instance nonetheless may support a finding of a continuing live controversy. The opposite is not true, however. There are no cases where alleged collateral consequences that were found insufficient to avoid a finding of mootness nonetheless were found to be sufficient to sustain jurisdiction in the first instance.

Alleged collateral consequences substantially similar to those relied upon by Volpicelli – a possible negative effect on future decisions regarding prison confinement, parole and probation – were not sufficient in *Lane* and *Spencer* to avoid a finding of mootness in a case where, as here, the underlying conviction was not being challenged. If such alleged collateral consequences would not be sufficient to avoid a finding of mootness in a case of this nature, then it follows with even greater force that the collateral consequences would not support a finding of custody and jurisdiction in the first instance.

Petitioner contends that *Lane* and *Spencer* are distinguishable in substance because those cases involved parole revocation orders whereas his case instead involves an order discharging the petitioner from probation. However, the key point for purposes of federal habeas jurisdiction is that the alleged consequences of the order – be it a parole revocation order or a dishonorable probation discharge order – are not sufficient to establish custody for purposes of federal habeas jurisdiction.[8]

The Court accordingly holds that the potential negative impact of the dishonorable discharge order on future decisions does not give rise to custody for purposes of habeas jurisdiction.

---

[8] Petitioner's reliance upon *United States v. Verdin*, 243 F.3d 1174 (9th Cir. 2001), is misplaced. *Verdin* concerned a direct appeal from a federal criminal conviction, a procedural context where continuing collateral consequences are presumed, and the defendant in any event was subject to a three-year period of supervised release.

Petitioner additionally contends, however, that custody is established for purposes of federal habeas jurisdiction because the civil disabilities that result from a conviction, as to such matters as voting and eligibility for jury duty, continue by operation of law following a dishonorable discharge from probation. He seeks leave to amend his petition, if necessary, to allege such civil disabilities as a basis for a finding of custody based upon the dishonorable discharge order.

Under N.R.S. 176A.850, subject to certain restrictions set forth in the statute, a person who has been honorably discharged from probation is restored to a number of civil rights, including, *inter alia*, the right to vote and the right to serve as a juror in a civil action immediately upon the honorable discharge. Under N.R.S. 176A.870, in contrast, a person who has been dishonorably discharged from probation is not restored to these civil rights.

In *Carafas v. LaVallee*, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968), the Supreme Court held that a petition filed while the petitioner still was actually incarcerated did not become moot upon the expiration of the sentence, due to the continuing collateral consequences of the conviction by virtue of the petitioner's inability to vote, engage in certain businesses, hold public office or serve as a juror. 391 U.S. at 237-38, 88 S.Ct. at 1559. The fact that these collateral consequences will avoid a finding of mootness in a case where a petitioner clearly was in custody when the petition was filed does not lead to the conclusion, however, that these collateral consequences, standing alone, will establish custody in the first instance. The Supreme Court's discussion of *Carafas* in *Maleng* instead strongly supports the conclusion that these collateral consequences are not sufficient to establish custody on their own at the time of the filing of the petition:

> We have never held . . . that a habeas petitioner may be "in custody" under a conviction when the sentence imposed for that conviction has *fully expired* at the time his petition is filed. Indeed, our decision in *Carafas v. LaVallee, supra*, strongly implies the contrary. In *Carafas*, the petitioner filed his habeas application while he was actually incarcerated under the sentence he sought to attack, but his sentence expired and he was unconditionally discharged from custody while his appeal from the denial of habeas relief below was pending before this Court. The State argued that the unconditional discharge rendered the case moot. We rejected this argument, holding that the "collateral consequences" of the petitioner's conviction-his inability to vote, engage in certain businesses, hold public office, or serve as a juror-prevented the case from being moot. *Id.*, 391 U.S., at 237-238, 88 S.Ct., at 1559. We went on to say, however, that the unconditional release raised a "substantial issue" as to the statutory "in custody" requirement. *Id.*, at

> 238, 88 S.Ct., at 1559-1560. While we ultimately found that requirement satisfied as well, we rested that holding *not* on the collateral consequences of the conviction, but on the fact that the petitioner had been in physical custody under the challenged conviction at the time the petition was filed. *Ibid*. The negative implication of this holding is, of course, that once the sentence imposed for a conviction has completely expired, the collateral consequences of that conviction are not themselves sufficient to render an individual "in custody" for the purposes of a habeas attack upon it.

490 U.S. at 491-92, 109 S.Ct. at 1925-26.

The Ninth Circuit since has stated that the foregoing discussion in *Maleng* "foreclosed any argument that collateral consequences could satisfy the in custody requirement for a petition filed after the expiration of the state sentence." *Resendiz v. Kovensky*, 416 F.3d 952, 956 (9th Cir. 2005).

This Court accordingly holds that the collateral consequences upon which Volpicelli relies – the lack of restoration of civil rights such as the right to vote and serve on a jury to a person who has been dishonorably discharged from probation– are not sufficient to satisfy the custody requirement.

Moreover, as respondents point out, petitioner in any event no longer is entitled to restoration of civil rights such as the right to vote because he now is incarcerated on a subsequent conviction and will not be able to secure restoration of the civil rights in question because he now has two or more felony convictions that do not arise out of the same, act, transaction, or occurrence. See N.R.S. 176A.850(4)(e). Given that jurisdiction is determined at the time of the filing of the federal petition, it is at least noteworthy that the collateral consequences relied upon no longer follow as a continuing result of the dishonorable discharge order as opposed to other intervening circumstances.

The motion to dismiss the petition without prejudice for lack of jurisdiction over the subject matter therefore will be granted.

The motion for leave to amend the petition to specifically allege these collateral consequences further will be denied. First, specific allegation in an amended petition of collateral consequences supporting the basic allegation of custody for purposes of federal habeas jurisdiction would appear to be unnecessary. Second, the requested amendment in any event would be futile because the collateral consequences in question do not support federal habeas jurisdiction.

Whatever remedy that Volpicelli may have or may have had to challenge the dishonorable discharge order, the Court does not have jurisdiction over the habeas petition presented.

IT THEREFORE IS ORDERED that respondents' motion (#16) to dismiss is GRANTED and that the petition shall be DISMISSED without prejudice for lack of jurisdiction over the subject matter.

IT FURTHER IS ORDERED that petitioner's motion (#21) for leave to amend the petition is DENIED, as the proposed amendment would be both unnecessary and futile.

The Clerk of Court shall enter final judgment accordingly, in favor of respondents and against petitioner, dismissing this action without prejudice for lack of jurisdiction.

DATED this 9th day of February, 2009.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE